IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, May 22, 2007

**STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES, v.
P.W.K., IN RE: J.B.K. DOB: 11/25/02**

**Direct Appeal from the Juvenile Court for Sullivan County
No. 11722    Hon. Paul R. Wohlford, Judge**

_____

**No. E2007-00131-COA-R3-CV  - FILED JULY 25, 2007**

_____

The parties stipulated statutory grounds for termination of parental rights, and the Trial Court found
that it was in the child's best interest that the father's parental rights be terminated.  On appeal, we
affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO,
JR., J., and D. MICHAEL SWINEY, J., joined.

J. Wesley Edens, Bristol, Tennessee, for appellant.

Robert e. Cooper, Jr., Attorney General and Reporter, and
Lauren S. Lamberth, Assistant Attorney General, Nashville, Tennessee, for appellee.

Kristen Rudder Morrell, Guardian Ad Litem, Bristol, Tennessee.

**OPINION**

        The State filed a Petition to Terminate the Parental Rights of both the father and the
mother to their daughter, J.B.K., on December 7, 2005[1].   The Petition charged that the child was
found to be dependent and neglected on November 26, 2003, when she was 11 months old, due to

_____

[1]The mother's rights were terminated and she apparently did not oppose the termination.

her parents' drug abuse, and that she had been in foster care ever since that determination. The Petition charged that grounds for termination, included abandonment, wanton disregard for the child's welfare, that the conditions leading to removal still existed, and that the father had been sentenced to 10 or more years in prison.

The father filed an Answer, admitting that he had received a sentence of ten or more years in jail, but denied all other grounds for termination, and denied that termination was in the child's best interests.

A trial was held on November 10, 2006, and the parties stipulated that grounds for termination existed pursuant to the statute, since father had been sentenced to ten or more years and the child was less than eight years old. The trial proceeded on the sole issue to determine the child's best interests.

Following the evidentiary hearing, the Trial Court ruled that he had considered the statutory factors of Tenn. Code Ann. §36-1-113, and that the factor about change of caretakers and environment was an "overriding" one. He found that a change of caretakers and physical environment would have a devastating effect on the child's emotional, psychological, and medical condition. The Court observed the child had a severe condition, and it was being adequately and competently treated, and that the foster parents were providing appropriate care. The Court stated that it hoped the father would deal with his drug problem and not relapse, but on the record there was no choice but to terminate his rights. The record established that the father was sentenced on multiple drug offenses in both Tennessee and Virginia and received a 15 years sentence in Virginia and a similar sentence in Tennessee.

The Court found the child had been in foster care for three years, since she was 11 months old, and that the father had attempted to maintain phone contact, but had not seen the child since July 2004. The Court said the child was doing well in the foster home, and she called the foster parents "mommy/daddy", and had a strong bond with the foster parents. The Court determined the child had a sensory disorder and received occupational therapy, and that the occupational therapist stated the child needed consistent treatment and full-time attention, and the foster family was providing for this. The Court stated that he had considered all the factors in Tenn. Code Ann. §36-1-113, and the child's best interests required termination. Further, that to remove the child from the foster home would have a devastating effect on the child's well-being, and the father did not show that he could provide a suitable home for the child.

The issue on appeal is whether the Trial Court erred in finding, by clear and convincing evidence, that termination of father's parental rights was in the child's best interests?

The best interests analysis is outlined in Tenn. Code Ann. §36-1-113 which states:

(I) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited

to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Due to the father's incarceration, he was unable to show that he had "made such an adjustment of circumstances, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent". Moreover, it was speculative whether he could provide a good home once he was released . He stated that he was free of drugs and did not intend to go back to that lifestyle once he was released from prison, but the Trial Court obviously rejected his testimony.

The father claimed to have a meaningful relationship with the child, but the only contact the father had with the child since 2004 was infrequent phone contact.

The evidence establishes that the child was happy and well-adjusted in her foster home, that she was well-loved by her foster family and that she loved them in return, and that they had provided for her every need, including her need for therapy to help with her ADHD and sensory issues. The occupational therapist testified at great length regarding the child's issues and the need for continual therapy, both in the office and at home, in order for her to overcome her disorder. The therapist corroborated that a change of caregivers and environment would be very detrimental to the child , and would likely cause regression. We conclude that the evidence was clear and convincing, as found by the Trial Court, that termination of the father's parental rights was in the child's best interest.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal to P.W.K.

_____
HERSCHEL PICKENS FRANKS, P.J.